IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


LARRY D.  MILNER                                                              PLAINTIFF

            v.                           Civil No.  4:08-cv- 4039

BOBBY CARLTON;
MEMS McKINNON; and
NEVADA COUNTY, AR                                                     DEFENDANTS


## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Larry Milner (Plaintiff) filed this *pro se* civil rights action under 42 U.S.C. § 1983 on May

9, 2008.  (Doc. 1)  Defendants filed a Court-ordered Motion for Summary Judgment (Doc.  42),

which is now pending before the Court.  Plaintiff also filed a Motion for Judgment as Matter of Law.

(Doc.  36).  The Court construed this Motion as a Motion for Summary Judgment by the Plaintiff.

Defendants submitted their Motion for Summary Judgment also as a reply to the Plaintiff's Motion

for Judgment as a Matter of Law.   The Motion for Judgment as a Matter of Law/Motion for

Summary Judgment (Doc.  36) filed by the Plaintiff is also now before the Court.  Pursuant to the

provisions of 28 U.S.C. § 636(b)(1) and (3), this case is referred to the undersigned by the Honorable

Judge Harry F.  Barnes for the purpose of issuing a report and recommendation on both Plaintiff's

and Defendants' Motions for Summary Judgment.  Accordingly, the undersigned issues this Report

and Recommendation.

## I.  Background

Plaintiff's claims stem from the time he was incarcerated in the Nevada County Detention

Center, which was from March 1, 2007 until April 2, 2007.  Plaintiff may have also been

incarcerated in Nevada County for a period of time in 2008; however, he brings no claims related

to the 2008 incarceration in this action.  Plaintiff alleges he was denied adequate medical treatment while in the Nevada County Jail.

Plaintiff was taken to the hospital on March 16, 2007 by the Nevada County Detention Center Staff, after complaints of chest pain.  (Doc.  47, ¶ 2).  Dr.  Dale Goins was the attending physician.  (*Id*.; Doc.  43).  Plaintiff states he left the hospital in pain, with no medications.  (Doc.  47, ¶ 2).  Plaintiff did stay in the hospital overnight for observation and was discharged the subsequent day, March 17, 2007. (*Id*.)  Defendants assert Plaintiff was advised to take Tylenol and Advil for his chest pain – Plaintiff states he received no medications until March 27, 2007 when he saw Dr. Vermont.  (*Id*.; Doc.  43).  Medical Park Hospital's Short Stay Summary (Doc.  43, Ex.  D) confirms Plaintiff was recommended Advil or Tylenol as needed for pain.  There is no record of Plaintiff submitting a grievance or request for medication due to chest pain until March 25, 2007.  However, it does not appear from the record Plaintiff was given any medication at that time, rather he was told he had an appointment with Dr.  Vermont on March 27, 2007.  Dr.  Goins, at the time of the emergency room visit, found Plaintiff's pain to be "noncardiac."  (Doc.  43, Ex.  4).

Paramedics were called to the Nevada County Detention Center on March 24, 2007.  (Doc.  43, Ex.  5).  Plaintiff had been complaining of chest pains, and the sheriff advised a jail worker to contact the paramedics.  (*Id*.).  Plaintiff states he had been in pain since the 14th or 15th of March, 2007, but the paramedics found his vital signs to be normal.  (Doc.  47, 4; Doc.  43, Ex.  5).  The paramedic advised milk and/or Maalox or Mylanta to ease the tightness, and the officer on duty so advised Plaintiff.  (*Id*.)

On March 25, 2007 Plaintiff states he fell off of the top bunk, injuring his back.  (Doc.  47, ¶ 7).  Plaintiff submitted medical care requests that day, and was told he had a doctor's appointment

on March 27, 2007.  (Doc.  47, ¶ 7).  On March 27, 2007 Plaintiff saw Dr.  Vermont.  (Doc.  47, Ex.  6).

Plaintiff states he had a follow-up appointment with Dr.  Vermont on March 30, 2007.  (Doc.  47, ¶ 9).  Plaintiff further states he was told Defendant McKinnon ordered two officers to take Plaintiff to his appointment on March 30, 2007, but that those two officers forgot.  (Doc.  47, ¶ 8).  Defendants appear to deny Plaintiff missed any appointments.  However, records from Dr.  Vermont (Doc.  43, Ex.  6) shows an appointment listed for March 30, 2007 and "DNKA" or "did not keep appointment" is noted.  (*Id*.).  The record shows Plaintiff had a subsequent appointment for April 16, 2007, which also was noted "did not keep appointment."  (*Id*.).  It is unclear who, if any of the Defendants, rescheduled Plaintiff's appointment for April 16, 2007; however, it is undisputed Plaintiff was no longer incarcerated in Nevada County on April 16, 2007.  (Doc.  47, ¶ 1; Doc.  43).

Plaintiff requested a chair to sit in on March 30, 2007, to relieve his back pain.  (Doc.  43, Ex.  3).  From the record before the Court, this medical request was not answered, nor was it forwarded to the doctor.  On March 31, 2007 Plaintiff again requested to see a doctor, due to chest and back pain.  (*Id*.).  This request also was unanswered and not forwarded.

## II. Discussion

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56 (c).  The Court views the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party.  *See Adkison v. G.D. Searle & Co.*, 971 F.2d 132, 134 (8th Cir.1992).  The moving party has the burden of showing the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### A. Official Capacity Claims

Plaintiff states he is suing the Defendants in both their official and individual capacities. Plaintiff's official capacity claims are tantamount to suing Nevada County. Official-capacity liability under 42 U.S.C. § 1983 occurs only when a constitutional injury is caused by "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978). Because *Monell* specifically rejected liability based solely on *respondeat superior*, *id.* at 691, "[a] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir.1994). Rather, official-capacity liability must be based on deliberate indifference or tacit authorization. *Id.*

Policy or custom official-capacity liability is imposed by 42 U.S.C. § 1983 only for "constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decision making channels." *Monell,* 436 U.S. at 690-91. The Eighth Circuit has upheld the grant of summary judgment because a plaintiff failed to plead that the defendant "had a policy or custom of false arrests or malicious prosecution." *Sanders v. Sears, Roebuck & Co.*, 984 F.3d 972, 976 (8th Cir. 1993).

Plaintiff has failed to articulate a custom, policy, or procedure of Nevada County which led to the alleged violations of his constitutional rights. When asked to state the custom, policy or procedure of Nevada County which was responsible for the constitutional violations, Plaintiff stated Defendants Carlton and McKinnon "work for Nevada County and they personally had knowledge of my medical needs, and by intentionally denying or delaying medical care makes Nevada County

-4-

responsible." Accordingly, Plaintiff has articulated no custom, policy, and/or procedure of Nevada County which is responsible for his alleged constitutional wrongs. It is my recommendation that Defendants' Motion for Summary Judgment be granted regarding Plaintiff's official capacity claims.

## B.  Individual Capacity Claims

Plaintiff claims he was denied medical care while incarcerated in the Nevada County Jail. Plaintiff does not claim he did not receive medical care, rather his claim appears to be that he was not given medication for his pain, and that his pain was not resolved.

To prevail on his claim of deliberate medical indifference Plaintiff must allege acts or omissions by Defendants "sufficiently harmful to evidence deliberate indifference to [his] serious medical needs." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The Eighth Circuit has interpreted this standard to include both objective and subjective components: "The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Jolly,* 205 F.3d at 1096 (quoting *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8 Cir. 1997)). In determining whether Defendants were deliberately indifferent to his serious medical needs, Plaintiff must demonstrate "more than negligence, more even than gross negligence." *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

"Mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Id.* Plaintiff must first establish that he suffered from an objectively serious medical need. A medical need is "serious" if diagnosed by a physician as mandating treatment *or* so obvious that even a lay person would recognize the necessity for a doctor's treatment. *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Plaintiff must then establish that Defendants were (1) personally

aware of his serious medical needs; and (2) deliberately disregarded those needs. *Id.* at 785-86. When an inmate is complaining about a delay in treatment, the "seriousness" of the deprivation must be measured by reference to the *effect* of any delay. *Id.* at 784 (citing *Crowley v. Hedgepeth*, 109 F.3d 500, 502 (8th Cir. 1997)). To succeed on his claim, Plaintiff must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment. *Id.*

In assessing whether Plaintiff had a "serious" medical need, Plaintiff states he suffered from pain in his back from his fall, and suffered from chest pain. Dr. Vermont noted "[i]t is hard to judge how real this is" (Doc. 47-6), referring to Plaintiff's complaints of back pain. The tests run at the hospital were normal relative to Plaintiff's complaints of chest pain, and the examining physician diagnosed the pain as "noncardiaiac". When the paramedics were called regarding claims of chest pain, Plaintiff's vital signs were normal. However, due to the severity of his alleged pain, the frequency of his complaints, lack of evidence to the contrary, and the treatment suggested by the physicians who treated Plaintiff, the Court will assume, without deciding, that Plaintiff had a serious medical need at the time in question.

Plaintiff must then demonstrate the Defendants knew of his serious medical needs and disregarded those needs. The record is unclear on how or why Plaintiff was sent to the hospital on March 16, 2007. Plaintiff states he had been in pain since the 14th or 15th of that month, and it can be assumed he made complaints, although he states he did not begin to ask for help in writing until after this time. (Doc. 47, ¶ 8(d)). Plaintiff indicates he spoke with Defendant McKinnon around this time, and the Court assumes Plaintiff told Defendant McKinnon about his complaints of pain.

Plaintiff was sent to the hospital on March 16, 2007, at the most two days after his complaints. Plaintiff was left overnight for observation. Defendants were not disregarding

Plaintiff's complaints of pain, but sought treatment for him.  Additionally, to the extent Plaintiff is asserting the delay in treatment on or around March 16, 2007 violated his rights, Plaintiff has proffered no evidence this delay caused him harm.  Indeed, his pain was found to be noncardiac in nature.  While Plaintiff complains he was not given any medication while at the hospital or on his return, the orders from the doctor were for him to receive it as needed.  It was not until March 25, 2007 that Plaintiff alerted anyone to pain.  When he did, he was scheduled for an appointment within two days.  While Plaintiff was not given any pain medication, and apparently pain medication was approved due to the doctor's directive from his hospital stay, there is no evidence the decision not to give medication came from either of the named defendants, or that they were the persons making these treatment decisions.

The record shows that when Sheriff Carlton was contacted by Karan Jones regarding Plaintiff's complaints of pain on March 25, 2007, the sheriff advised her to contact the paramedics who arrived by ambulance.  Again, Plaintiff can not show deliberate indifference when Defendant Carlton acted quickly to provide medical treatment to Plaintiff.  Plaintiff suggests he should have been transported, but the paramedic did not find this action to be warranted.  Again, Plaintiff has not shown the Defendants made any decisions regarding Plaintiff's treatment in this instance.  The Defendants simply provided medical providers to Plaintiff given his complaints of pain.

Plaintiff also appears to be disputing the course of treatment he was given by the emergency room and the paramedics.  The Court notes none of these individuals are parties to this lawsuit.  Additionally, a disagreement with treatment decisions is not a constitutional violation.  *Estate of Rosenberg*, 56 F.3d at 37.

Plaintiff was not taken to the hospital or to see a doctor at each request.  However, Plaintiff

was scheduled for timely appointments or provided with emergent care when he complained of pain. Plaintiff has shown an appointment was set for him with Dr. Vermont for March 30, 2007. Clearly, he was not taken to this appointment. As noted above, Plaintiff states Defendant McKinnon ordered officers to take Plaintiff to this appointment, but the officers forgot. This suggests negligence on the part of the officers, at most. Plaintiff appears to be contending Defendant McKinnon was deliberately indifferent to his medical needs by giving an Order for Plaintiff's transport, and then not following up to make certain Plaintiff was transported to his appointment. Again, these actions do not arise to more than negligence. Moreover, the appointment was a follow-up for a cardiac work up and to further "look at [Plaintiff's] back." (Doc. 47, ¶ 9(c)). Plaintiff has not alleged, nor provided any medical evidence, as to how this missed appointment caused him injury. Plaintiff states he is seeing doctors at the Arkansas Department of Correction and "no one seems to know what is wrong with my back." (Doc. 47, ¶ 10). There is no indication an evaluation of Plaintiff's back on March 30, 2007 would have provided additional insight into Plaintiff's injury.

Furthermore, Plaintiff has complained of another missed appointment on April 16, 2007, but it is clear Plaintiff was not incarcerated with Nevada County at this time. Plaintiff has also stated he was not allowed to take medications with him when he was released, but that claim appears to have been made for the first time on Plaintiff's response to Defendants' Motion for Summary Judgment and is not before the Court at this time. [1] Plaintiff's final claim of denial of medical treatment appears to be related to his requests for a chair on March 30, 2007 to relieve back pain, and

---

[1] Additionally, Plaintiff has provided copies of a newspaper article describing how medical costs were seriously cutting into the budget of the Nevada County Jail. The article does not state the jail will be denying or cutting back on any medical treatments and appears to be irrelevant to the matters in this case.

his request to see a doctor on March 31, 2007.  It appears neither of these requests were answered by the Nevada County jail.  Plaintiff was released two days after the March 31 request.  Plaintiff stated he had a doctor's appointment on March 30, and that his chest and back were hurting.  There were no indications of acute pain, and Plaintiff did not file any further grievances or requests.  There is no evidence these requests were sent to the Defendants in this case, or that the Defendants made any decisions regarding those requests.  As such, I it my recommendation that a finding of deliberate indifference can not be made.

### III.  Conclusion

For the reasons stated above, it is my recommendation that Defendant's Motion for Summary Judgment (Doc.  42) be **GRANTED** and Plaintiff's Motion for Judgment as a Matter of Law (Doc. 36) be **DENIED**.

**The parties have ten (10) days from receipt of this report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**IT IS SO ORDERED** this **17th day of August, 2009.**

/s/ Barry A.  Bryant
HON.  BARRY A.  BRYANT
UNITED STATES MAGISTRATE JUDGE